Lees v. Graduate Center of the City University. Good morning, Your Honors. Justin Clark from Levine & Blitt PLLC for the Plaintiff Appellant, Carol Lees. This is an appeal of a retaliation under Title IX in employment action, where the lower court dismissed, unpursuant to Rule 12b-6, the complaint of the appellant, or pursuant to the slatterly progeny, where it states that if there's gradual employment actions that indicate that there was, prior to the retaliation or the protected activity, that there's not going to be any type of claim that could survive. And it's our position that there was, in fact, a protected activity that occurred well before any type of negative performance evaluation or anything. That was not referenced in your complaint as the protected activity about which you were complaining. Retaliation occurred. It's something that you've come up with after the fact. You want to amend the complaint to include it. But so far, my understanding is that the problems for Lees, as far as Bishop was concerned, started the day Bishop showed up for work in January of 2013. Your Honor, respectfully, that's not the correct version of the facts as far as what was alleged in the complaint. One of the things that the court cited to, and I can refer your Honors to Appendix page 9, is that there was the discussion in paragraph 29 of the complaint regarding the issue of renewal of their visa. This paragraph does not allege that there were any disruptions beginning in January 2013. The first allegation of any type of disruption occurred in February 2014 after the oral complaint was made to Ms. Bishop by my client, Ms. Lees. Referring back to your Honor's question, even though it was not identified specifically as a protected activity, it was part of the complaint that was referenced within the cause of action, the first cause of action, the Title IX complaint. And taking the pleadings liberally, it could be recognized as a protected action. Any complaint about a violation of Title IX should be considered a protected activity. Whether or not it's explicitly identified in the complaint, I think that was an oversight. We don't even have a date on it. That's correct, your Honor. There is no date identified in the complaint. However, when you take, there's an inference that it occurred in 2013. The allegations of the complaint, I think it's best to walk through the timeline of the complaint because it's not necessarily the most clear timeline set forth. Ms. Bishop became the Executive Director in 2013. At that time, there was an oral complaint shortly thereafter. Ms. Lees then took FMLA leave from November 2013 through January 2014. When she returned, she was issued a negative performance review, the first of her 20-year career with the Graduate Center. And from there on, there was problems with— You hadn't gotten any positive reviews from Bishop before that, right? Not that I'm aware of, your Honor. That's correct. Thereafter, that's when the problems with the renewal began. They had an agreement regarding a job description for an H-1B visa that was delayed by Ms. Bishop for several months. After she made a complaint to the provost of the Graduate Center, she attempted to get a new type of visa, the TN-NAFTA professional visa. And that also was—there was met by non-cooperation that eventually led to the expiration of her visa and hence the termination of her employment. It's our position that there was sufficient temporal and circumstantial evidence that was alleged that would indicate that there was retaliatory intent behind the termination or the inaction that led to the termination. Further, the slattery opinion is what was relied upon by the district court in reaching this position. And I think that that case rate there is an opposite because we are talking about actions that occurred after the oral complaint that appears in the actual complaint of the lawsuit, not actions that occurred years before that a jury or someone could consider would lead to progressive discipline or eventually termination. There were no issues with employment that—or issues with her employment or performance or even renewing a visa up until she made her oral complaint to Mrs. Bishop. I reserve three minutes for rebuttal and I'd like to rest for now. I have a question that doesn't directly go to the issues before us but nevertheless arose when I was reviewing the papers. Your client had an H-1B visa? Yes, Your Honor. How did she qualify for an H-1B visa? I'm not sure of the particularities. I know that's something that was— That's the injury. That's the injury here. She's the director of the visual media lab for the art history program at CUNY, which I assume in the old days meant slides and now means computer displays of this. It seems hard to think that we would need a Canadian to do that work. Yes, Your Honor. So how did she qualify for an H-1B visa? She also taught classes at the Graduate Center in this type of area or this field. I'm not suggesting that that's an area where only with someone who has this kind of a visa could the spot be filled. Art history is an area where people can't get jobs because there aren't enough openings. I understand. I'm not terribly familiar with the immigration law, but I do understand that she must have been considered some sort of expert in order to—or some sort of— Expert in what area? In the visual field of maintaining art history and preserving those records. Okay. Counsel. Thank you. Good morning. David Lawrence III, Assistant Solicitor General, appearing on behalf of Defendant Appley, Graduate Center—City University of New York. The district court correctly ruled that plaintiff failed to state a claim for retaliation under Title IX. That is because plaintiff fails to plausibly allege that any adverse action was causally linked to her having complained of alleged discrimination. The argument seems to boil down to now the oral complaint that was made apparently in 2013 and that preceded the negative evaluation. And so the negative evaluation, which was your answer to the formal complaint, is now not relevant to the oral complaint. And what is your proof that that—or why do you think that amending the complaint to include that as the protected activity would be futile? Your Honor, because the complaint alleges that the alleged retaliatory activity began before even the oral complaint. At paragraphs 29 to 30 of the complaint, the plaintiff alleges that she needed to renew her visa in order to maintain her employment, that the process began as early as January 2013, that after two years passed, she did not get the visa, and she blames this on, in paragraph 30, on the purposeful—alleged purposeful delay by CUNY in order to terminate the plaintiff. So even if you were to consider the oral complaint under this court decision in slattery— That was in 2013. According to the complaint, it began in January of 2013. Furthermore, as to the written evaluation, my brief cites abundant case law stating that where you have a new supervisor who comes on the scene, that they're entitled to give their own assessment of the employee's performance, and the fact that they give a negative assessment does not evidence retaliation. As to the written complaint in July 2014, that the plaintiff alleges in her complaint is the sole protected activity— That was the negative evaluation preceded that. Yes, Your Honor. So obviously that can't be a retaliatory act for that complaint. That July 2014 complaint she alleges was followed in October 2014 by her termination. In the first place, that three-month gap is too large to establish temporal proximity under the Supreme Court's case in Clark County School District v. Breeden that I cited in my brief. And furthermore, as I've already stated, the alleged retaliatory activity began in January 2013, which is far before the July 2014 written complaint. Other alleged retaliatory activity by CUNY also does not establish any retaliatory intent. For instance, the fact that Ms. Bishop allegedly failed to act on the oral complaint of discrimination, basically dismissed the complaint, does not establish retaliation, because under this Court's case law, you're no worse off if you file a complaint of discrimination that's not acted on than if you'd never filed a complaint of discrimination at all. Furthermore, the plaintiff alleges that Bishop was already hostile to the plaintiff before even the oral complaint of discrimination. The plaintiff alleges that the hostility then increased. So obviously it preexisted, that oral complaint. As to the written complaint, the plaintiff alleges that the hostility continued. So this is something that was longstanding that cannot establish any retaliation. In any event, the claim of hostility is very vague. It's conclusory. It doesn't really establish anything anyway. Contrary to the arguments in the plaintiff's brief, she does not allege any direct evidence of retaliatory animus. Under this Court's case law, direct evidence consists of statements by a defendant or a defendant's employee indicating that the alleged retaliatory act was taken in retaliation for the complaint of discrimination. Finally, the District Court correctly denied the plaintiff's one-sentence request for leave to amend her complaint. That one-sentence request was conclusory. It gave no facts that the plaintiff said she would allege that could stay a plausible claim. Even on appeal, plaintiff's request for amendment is vague. It doesn't say, it doesn't give specific allegations that the plaintiff would allege that could stay a plausible claim. And the plaintiff's had abundant opportunities to specify her claim. After we filed our motion to dismiss, the plaintiff was then on notice that we were claiming that there was no evidence of retaliatory intent. She could have given factual allegations then that she would plead in order to stay a plausible claim. She didn't do that. So she's decided to persistently rest on her vague allegations and not attempt to give facts that might stay a plausible claim. And in any event, I don't believe she can stay a plausible claim. Given her allegations in her complaint, that the alleged intent and acts to non-renew her, to terminate her, began as early as January 2013 before she made any complaint of discrimination. So in order to stay a plausible claim, she'd have to belie the allegations of her initial complaint. I don't believe that's the purpose of an amended complaint. For all of these reasons, the Court should affirm the judgment of dismissal. Thank you. Thank you. Clerk, you do reserve some time for rebuttal. Just very briefly, Your Honors. Again, my opponent and then also the lower court focused much of their attention on paragraphs 29 and 30 of the complaint, which is in the appendix, page 9. These paragraphs do not state anything about problems with obtaining a visa prior to 2014. So I think that that statement of fact is a misreading of the complaints. And I think that it was used by the opponent and also the lower court to obtain a result that was not just in the situation. Because it didn't consider what paragraphs of the complaint. By focusing on those, it overlooked. It overlooked the paragraphs 31, which also discuss the paragraphs 31 and also paragraphs 31 and 32, which discuss what was going on when there was a problem with trying to renew the visa. Specifically that there was a job description that was agreed upon that wasn't published with delay. And then once it was published, it was unworkable. And that then Ms. Lees took action in order to try to get a new type of visa other than the H-1B, which was ignored and there was no cooperation provided. How is that all attributable to Ms. Bishop? Because the question is, how do you link that conduct to the alleged retaliation? Ms. Bishop, as the supervisor for Ms. Lees, was responsible for creating the job description that would be submitted as part of the H-1B visa process. Where you have to obtain applicants and compare them to United States citizens that might be able to sustain the position. And by not creating that position, or without submitting that job description, it interfered with her opportunity to get the H-1B visa. By the time that she- Yeah, you see, that's where my earlier question came in. How could a supervisor colorably make that argument? Well, she had had that position for over 20 years. Previous supervisors had done the same. But not Ms. Bishop filling it out, right? That's correct. Okay. Thank you. All right, thank you. We'll take that case under advisory.